**RECORD NO. 13-2445**

In The

# United States Court Of Appeals
# For The Fourth Circuit

## DAVID C. MARTIN,

*Plaintiff – Appellant,*

v.

## NAES CORPORATION,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT LYNCHBURG**

————————

**BRIEF OF APPELLEE**

————————

Alison N. Davis
E. Ashley Sims
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, D.C.  20036
(202) 842-3400

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2445__        Caption: David C. Martin v. NAES Corporation

Pursuant to FRAP 26.1 and Local Rule 26.1,

NAES Corporation
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                ☑ YES ☐ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
        ITOCHU International, Inc. (III) and I-Power Investment, Inc.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☑ YES ☐ NO
       If yes, identify all such owners:
        ITOCHU Corporation

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
If yes, identify entity and nature of interest:

   Chubb and Son, Inc.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: Alison N. Davis                        Date:    12/17/2013

Counsel for: NAES Corporation, Appellee

## CERTIFICATE OF SERVICE
**************************

I certify that on _____12/17/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mary M. Spangler
M. M. Spangler, Attorney at Law
6319 Still Spring Place
Alexandria, Virginia  22315
Tel: 703.746.8373
Fax: 703.746.8373
email: mspangler549@gmail.com

Alison N. Davis                                        12/17/2013
       (signature)                                        (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

I.     STATEMENT OF THE CASE ............................................................1

       A.    NAES Repeatedly and Consistently Maintained That Martin's Acceptance of the Pittsylvania Position Defeated any Claim That NAES Was Obligated to pay Him Severance.............................1

       B.    Appellant Accepted the Transfer to the Pittsylvania Power Station Knowing That NAES Would not Pay him Severance..............2

             1.    NAES Corporation Shutdown of the Altavista Power Station ..................................................................2

             2.    The Written Offer of Severance....................................3

             3.    Martin Accepts a Permanent Job at the Pittsylvania Power Station ...............................................4

       C.    NAES did not Rely Solely on the Transfer Letter to Show it had No Obligation to Pay Martin Severance ...............................8

       D.    Relevant Procedural History .................................................9

       E.    Rulings Presented for Review .............................................10

II.    SUMMARY OF ARGUMENT....................................................10

III.   ARGUMENT.............................................................................12

       A.    NAES Twice Expressly Raised Martin's Acceptance of a Transfer/Continued Employment as Grounds for Summary Judgment .....................................................12

       B.    The District Court Did Not Err in Holding that Martin's Acceptance of the Transfer had a Legally Binding Effect.................15

C.  The District Court Properly Held That There Was a Meeting of the Minds Between Martin and NAES Corporation on the Terms of his Transfer ..........................................................................17

　　1.  Mutual Assent Existed With Regard To The Transfer Agreement ..............................................................................17

　　2.  The District Court Correctly Held That Martin Cannot Avoid his Express Acceptance of Continued Employment by Claiming "Duress" ........................................20

　　3.  The Letter Attached to the Transfer Agreement Likewise Has No Effect on the Terms of the Transfer Agreement..........22

D.  The District Court Properly Considered the Transfer Offer Letter in Granting NAES's Motion for Summary Judgment..............24

　　1.  The Transfer Letter Is Not Hearsay ..........................................25

　　2.  The Best Evidence Rule Does Not Preclude Admission of the Transfer Letter ................................................................26

IV.  CONCLUSION..................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caldwell v. Johnson*,
   289 Fed. App. 579 (4th Cir. 2008) ...............................................................15

*Cary v. Harris*,
   120 Va. 252, 91 S.E. 166 (Va. 1917) ...........................................................21

*Conger Life Insurance Co. v. Deimel*,
   441 So.2d 1116 (Fla. 3rd DCA 1983) ...........................................................18

*Connors v. Chrysler Financial Corp.*,
   160 F.3d 971 (3d Cir. 1998) ...........................................................................21

*DiGiacinto v. Ameriko-Omserv Corp.*, (1997)
   59 Cal. App. 4th 629 (69 Cal. Reptr. 2d 300) .............................................18

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) .........................................................................................15

*Freedlander, Inc. v. NCNB National Bank of North Carolina*,
   706 F. Supp. 1211 (E.D. Va. 1988) ...............................................................20

*Henn v. National Geographic Soc'y*,
   819 F.2d 824 (7th Cir. 1987) .........................................................................21

*Hercules Powder Co. v. Brookfield*,
   189 Va. 531 (Va. 1949) ...................................................................................18

*Kepner-Tregoe Inc. v. Leadership Software*,
   12 F.3d 527 (5th Cir. 1994) .....................................................................25, 26

*King v. Donkenny, Inc.*,
   84 F. Supp. 2d 736 (W.D. Va. 2000) .............................................................21

iii

*Matvia v. Bald Head Island Management, Inc.*,
    259 F.3d 261 (4th Cir. 2001) ...................................................................15

*Moorman v. Blackstock, Inc.*,
    276 Va. 64, 661 S.E.2d 404 (Va. 2008) .......................................17

*Mueller v. Abdnor*,
    972 F.2d 931 (8th Cir. 1992) ...................................................................25

*Persinger & Co. v. Larrowe*,
    477 S.E.2d 506 (Va. 1996) ...................................................................17

*Preferred Properties Inc. v. Indian River Estates Inc.*,
    276 F.3d 790 (6th Cir. 2002) ...................................................................25

*Robinson v. Equifax Information Services, LLC*,
    560 F.3d 235 (4th Cir. 2009) ...................................................................22

*Rowell v. BellSouth Corp.*,
    433 F.3d 794 (11th Cir. 2005) ...................................................................21

*Seward v. American Hardware Co.*,
    161 Va. 610, 171 S.E. 650 (Va. 1933) .......................................21

*Smith v. Farrell*,
    98 S.E.2d 3 (Va. 1957) ...................................................................17

*Steeves v. United States*,
    2006 WL 3526911 (W.D. Va. Dec. 6, 2006) ...............................15

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*,
    386 F.3d 581 (4th Cir. 2004) ...................................................................22

*Waddy v. Grimes*,
    153 S.E. 807 (Va. 1930) ...................................................................20

*Wheatley v. Wicomico Cty, Md*,
    390 F.3d 328 (4th Cir. 2004) ...................................................................23

iv

*Whitten v. Fred's, Inc.*,
    601 F.3d 231 (4th 2010), *abrogated in part by*
    *Vance v. Ball State Univ.*,
    133 S. Ct. 2434 (2013)................................................................. 15-16

*Williams v. Prof. Transp., Inc.*,
    294 F.3d 607 (4th Cir. 2002) ............................................................23

**Rules**

FED. R. APP. P. 28(b)(5) ............................................................12

FED. R. CIV. P. 56 ....................................................................1

FED. R. CIV. P. 56(c) .................................................................5

FED. R. CIV. P. 56(c)(2) ..............................................................8

FED. R. CIV. P. 56(c)(3) ..............................................................3

FED. R. CIV. P. 56(f)(2)..........................................................11, 12

FED. R. EVID. 801(c)................................................................25

FED. R. EVID. 801(c)(2).............................................................25

FED. R. EVID. 901...................................................................26

FED. R. EVID. 901(a)................................................................26

FED. R. EVID. 902...................................................................26

FED. R. EVID. 1003...............................................................26, 27

Fed. R. Evid. 1004(c)..............................................................27

**Other Authorities**

Restatement (Second) of Contracts § 19(1) (1981) ..................................................18

Restatement (Second) of Contracts § 59 (1981) .....................................................23

## I.     STATEMENT OF THE CASE

### A.     NAES Repeatedly and Consistently Maintained That Martin's Acceptance of the Pittsylvania Position Defeated any Claim That NAES Was Obligated to pay Him Severance.

On October 23, 2012, NAES Corporation (NAES) filed a motion to dismiss Martin's complaint in its entirety.  Joint Appendix ("J.A.") at 16[1].   In that motion, NAES took the position that Martin did not have a legal claim to severance because he accepted the transfer to the Pittsylvania Power Station with full knowledge that NAES would not pay severance.  J.A. at 32-34.  In support of that motion, NAES contended that:

> Plaintiff is not entitled to severance because he accepted the transfer to the Pittsylvania Power Station, and NAES's final offer of severance specifically excluded him from eligibility for the severance under those circumstances, and thus, judgment must be entered in favor of NAES on Plaintiff's breach of contract claim. . .

J.A. at 28.   NAES also directed the District Court to the transfer letter without any objection from Martin.  J.A. at 48.  The District Court considered the motion under Rule 56 and, initially, denied NAES's motion as to Appellant's breach of contract claim because at that preliminary stage there might have been a genuine issue of fact.  J.A. at 333.

---

[1] Citations to the joint appendix are to the page numbers as Appellant has designated.

After, the parties completed discovery, on August 30, 2013, NAES renewed its motion for summary judgment. In this renewed motion for summary judgment, NAES again expressly argued:

> [Martin] is not entitled to severance because *he accepted the transfer* to the Pittsylvania Power Station, and *NAES's offer of a transfer* to Pittsylvania specifically excluded him from eligibility for the severance under those circumstances.

J.A. at 105-06, *emphasis added*. Further, NAES again relied on the transfer letter which was already part of the summary judgment record. J.A. at 161-63. Indeed, in opposition to NAES's renewed motion, Appellant vigorously argued that the District Court's denial of NAES's initial motion was dispositive of the renewed motion because the two motions were substantially similar. J.A. at 198. Thus, it is disingenuous for Appellant to argue that he was surprised by NAES's reliance on the transfer letter to which the company cited in its first motion.

**B.    Appellant Accepted the Transfer to the Pittsylvania Power Station Knowing That NAES Would not Pay him Severance.**

**1.    NAES Corporation Shutdown of the Altavista Power Station**

NAES is a leading independent services provider for the energy industry and related infrastructure markets. NAES offers facility operations, maintenance, construction services, turbine repair and overhaul, technical support, and staffing to the energy industry. On June 3, 2010, NAES announced to its employees at its Altavista Power Station that there would be a reduction in force in November 2010

2

because its customer, Dominion, was placing the power station in cold storage. J.A. at 111-15 (¶¶ 3-4). Martin was among the employees initially notified that their employment would end on November 19, 2010, and that he would be eligible for severance upon meeting certain conditions. J.A. at 11 (¶¶ 1-2); 112 (¶ 6).[2]

### 2.    The Written Offer of Severance

Prior to NAES extending a written offer of severance to eligible employees, Martin accepted a temporary transfer to the Gordonsville Power Station, which NAES also managed.[3] J.A. at 142-43, 92:22-93:6. Expecting that Martin's employment would terminate with NAES, on December 15, 2010, NAES gave Martin a written offer of severance. J.A. at 122-124 (11:14-13:4); J.A. at 157- 60. The offer provided that if Martin remained at NAES until his employment with NAES terminated, and Martin agreed to the other terms of the severance agreement, including the execution of a waiver and release, NAES would pay him severance in the amount of $25,706.85. *Id*. at 1(¶ 6a). Further, the offer of

---

[2] In an apparent effort to create a disputed issue of fact regarding the substance of the communication to employees about NAES paying severance, Martin relies on an affidavit from Richard Notestein. Martin Opening Brief ("Martin Opening Br.") at 4. However, Martin did not cite this affidavit in response to NAES's renewed motion for summary judgment. Under Rule 56(c)(3) of the Federal Rules of Civil Procedure, Martin was obligated to support his assertions of fact with citations to the record. FED. R. CIV. P. 56(c)(3). He did not.

[3] Contrary to Appellant's Statement of the Case, the undisputed facts show that NAES assured Martin that his eligibility for severance would not be impacted by accepting the assignment to Gordonsville. J.A. at 99.

severance provided that Martin's anticipated last day of employment with NAES would be December 26, 2010.  *Id*. at 1(¶ 1).

### 3.    Martin Accepts a Permanent Job at the Pittsylvania Power Station

Before Martin's anticipated termination date of December 26, 2010, NAES identified an available position at a power station in Pittsylvania, Virginia for which Martin was qualified and which would allow his employment with NAES to continue without a break in service.  J.A. at 111-15 ( ¶ 11).

NAES verbally offered Martin the position at the Pittsylvania Power Station on December 21, 2010, five (5) days before his anticipated lay off date; and expressly reminded Martin that he would not qualify for severance benefits if he accepted the alternative position in Pittsylvania.  J.A. at 192-93(4:20-5:11); J.A. at 150(120:4-17).   On December 22, 2010, Martin emailed John Helton, the Pittsylvania Plant Manager, to accept the transfer to Pittsylvania.  In accepting the new position, Martin expressly acknowledged that he was, albeit begrudgingly, making the conscious decision to forego severance benefits in favor of continued employment.  Martin stated, "I will love to go to work for you at the Pittsylvania Power Station if you really want me to work there. . . I wasn't expecting a job offer

4

with a cut in pay ***and losing my severance***." J.A. at 149-50(119:2-20:10); J.A. at 176-78.[4] (emphasis added).

Despite the fact that Martin had expressly accepted the transfer to Pittsylvania and acknowledged he would not receive severance as a result of his decision, in his written correspondence of December 22nd, Martin subsequently inquired of Ron Otteni, Human Resources and Employee Relations Manager for NAES, whether he would still receive the severance package if he went to work at Pittsylvania. J.A. at 111-15(¶ 12); J.A. at 117-19. In response, Otteni again confirmed that if Martin accepted the job at the Pittsylvania Power Station, Martin would not be eligible for severance. J.A. at 114(¶ 13); J.A. at 118. Otteni reiterated the two options: (1) reject the transfer and accept the severance; or (2) accept the transfer and begin work at the Pittsylvania Power Station without severance, and provided him with the opportunity to consult with counsel about the severance. *Id*. Otteni memorialized his conversation with Martin in an email to John Helton and others on December 22, 2012. *See Id*.

Martin expressed dissatisfaction with his options on December 26, 2010. J.A. at 167-73. However, Martin stated that although he did not agree with

---

[4] Despite the evidence in the record, J.A. at 149-150(119:2-120:10); J.A. at 176-178, Martin in his Opening Brief implies that he first learned of the opportunity to transfer to the Pittsylvania Power Station and the rate of pay on December 22, 2010. Martin Opening Br. at 5. There is no evidence in the record to support this assertion and Martin has not cited any such evidence. *See* Rule 56(c) of the Federal Rules of Civil Procedure.

NAES's position, he understood that NAES would not pay him severance, and continue his employment with NAES at the Pittsylvania Power Station. *Id.* at 173. Specifically, he stated, "John Helton told me if I wanted the job I would come in tomorrow [December 27, 2010] to sign the acceptance letter and sign a paper to forfeit my Altavista Power severance." *Id.*

NAES told Martin yet again that he could not accept both the severance and the job at the Pittsylvania Power Station in a December 27, 2010 written transfer offer letter. J.A. at 161-63. The letter stated that should Martin accept the Pittsylvania job he would be transferred, not terminated, and the written offer to pay severance, which he received on December 15th, would become null and void. *Id.* The letter further stated that to accept the Pittsylvania transfer, Martin had to sign and return a copy of the letter acknowledging that he had read the offer letter and understood that he would not receive severance as a result of his decision to accept alternative employment with NAES. *Id.*

Notwithstanding his own acknowledgment that he could not both accept the new position in Pittsylvania and receive severance, on December 28, 2010, Martin simultaneously executed the initial offer of severance, <u>and</u> the written offer letter to transfer him to a regular position at the Pittsylvania Power Station. The latter accepted offer of transfer again clearly stated, "Please also note that upon acceptance of this offer of transfer, previously provided severance documents

6

dated December 15, 2010 become null and void since no termination of employment occurred on December 26, 2010." J.A. at 157-60; J.A. at 161-63.

At his deposition, Martin admitted that he knew that if he signed the offer letter he would not receive a severance package.

Q.    And in the job offer letter that you signed, it also tells you that you can only have the job or severance; correct?

A.    In this severance -- in this -- in, (indicating), this letter?

Q.    Yes.

A.    Basically, yeah.

Q.    Well, isn't that what paragraph two of the letter says?

A.    Yes, ma'am.  That's why I was under duress, because I didn't agree with it.  I didn't want to sign it, but I was told to sign it under duress.

Q.    And if you hadn't signed it, what would've happened?

A.    Then I wouldn't have got the job, that is for sure.  I wouldn't've -- probably wouldn't go working for NAES today.

Q.    But you would have gotten your severance; correct?

A.    Yes, ma'am. . .

J.A. at 152-53(133:16 – 34:14).  Martin went on to testify:

Q.    You did not agree, but they told you that you could not get both the job and severance?

A.    They told me that I could not get both the job and the severance, and I told them I disagreed with it.

7

J.A. at 156(141:10-15).  Martin further stated during his deposition:

> Q:     And what did Mr. John Helton say to you?
>
> A:     He said I could have the severance or the job, one or the other, not both.

J.A. at 151(132:2-4).

### C.     NAES did not Rely Solely on the Transfer Letter to Show it had No Obligation to Pay Martin Severance.

There is substantial competent evidence that Martin decided to continue his employment with NAES and accepted the transfer to the Pittsylvania Power Station knowing fully that NAES would not pay him severance.  There is no dispute that the transfer letter about which Martin at the eleventh hour attempted to create a disputed issue of material fact contains the same terms as the transfer letter which Martin signed.  J.A. at 297.

Moreover, Martin failed to challenge timely or adequately this *particular* copy of the transfer letter, per Rule 56(c)(2), after initially identifying the document as a true and correct copy at his deposition.  During his deposition, counsel for NAES requested that Martin identify certain documents, including the letter offering Martin a transfer to the Pittsylvania Power Station.  J.A. at 125(14:1 – 22).  Martin testified that he signed the document on December 28, 2010.  *Id*. Martin did not dispute the authenticity of the letter or request to inspect the original transfer letter at his deposition.  *See id.*

After the close of discovery, NAES filed its motion for summary judgment, and cited pleadings, depositions, documents and declarations in support of its undisputed facts. J.A. at 93. Specifically, with respect to the letter offering Martin a transfer to the Pittsylvania Power Station, NAES cited Martin's deposition testimony. J.A. at 101-02. Again, Martin did not question the authenticity of the document. Only at oral argument did counsel for Martin finally challenge the authenticity of the transfer letter. J.A. at 296-97. Counsel for Martin however conceded that the terms of the transfer letter were not the issue, but a NAES representative's missing signature. *Id.*

## D.    Relevant Procedural History

Martin filed this action in the Circuit Court for Campbell County, Virginia. In his initial filing, Martin alleged a common law breach of contract claim based upon NAES's purported failure to fulfill an obligation to pay him severance, and age discrimination in violation of the Age Discrimination in Employment Act. J.A. at 11.

NAES removed the action to the United States District Court for the Western District of Virginia, and filed a Motion to Dismiss or in the Alternative for Summary Judgment ("Motion to Dismiss"). J.A. at 16. The District Court dismissed Martin's age discrimination claim on February 14, 2013, holding that Martin had failed to exhaust his administrative remedies. The District Court

considered NAES's argument regarding the breach of contract claim as a motion for summary judgment and denied that motion without prejudice, permitting Martin to proceed with discovery on his breach of contract claim.  J.A. at 79, 87.

After the close of discovery, NAES renewed its Motion for Summary Judgment.  J.A. at 93.  After briefing and oral argument, U.S. District Court Judge Norman K. Moon entered summary and final judgment in favor of NAES on November 6, 2013.  J.A. at 5, 194, 218, 321, 333.  In response to Martin's argument that NAES's renewed motion was somehow foreclosed by the District Court's denial of NAES' initial motion, the lower court expressly held:

> I disagree with the suggestion that there has been no change.  While the two motions are substantially alike, the present motion includes Plaintiff's telling admission that he understood that he could receive only severance or the Pittsylvania job, and not both.

J.A. at 333.

### E.    Rulings Presented for Review

Martin appeals the District Court's Order granting NAES summary judgment on his breach of contract claim.

## II.    SUMMARY OF ARGUMENT

First, the District Court did not grant summary judgment on grounds which NAES had not raised.  The District Court based its decision on Martin's express agreement to the terms upon which NAES offered to continue to employ him via a transfer to the Pittsylvania Power Station.  The record is clear that from the outset,

10

NAES has contended that Martin's opting to accept the position at the Pittsylvania Power Station meant that he would not be paid severance. Accordingly, Martin had notice and a reasonable time to respond to NAES's argument, and the District Court acted in compliance with Rule 56(f)(2) of the Federal Rules of Civil Procedure.

Second, whether the District Court characterized the letter offering to transfer Martin to the Pittsylvania Power Station as a "legally binding contract" or a "personnel action" is of no consequence. The lower court expressly concluded that it was undisputed Martin accepted the transfer to the Pittsylvania Power Station with full knowledge that he was giving up any opportunity to qualify for severance pay. And the record clearly supports the lower court's finding.

Third, the District Court did not err in holding that there was a meeting of the minds with regard to the terms of Martin's transfer to the Pittsylvania Power Station. Acknowledging that the District Court correctly held that the "under duress" language had no legal effect, Martin contends, for the first time on appeal that Martin's notations on the transfer letter and his incorporation by reference of a letter from his counsel should be considered a "counteroffer." This Court cannot consider issues raised for the first time on appeal absent exceptional circumstances, which do not exist in this case. Even if the Court considers these arguments, the District Court correctly held that by accepting the transfer to the Pittsylvania

Power Station, Martin elected the option of continued employment knowing he could not also receive severance.

Fourth, the District Court did not err in disregarding Martin's belated and unsupported objection to consideration of the copy of the transfer letter identified in Martin's own deposition. That document was not the only evidence of Martin's informed acceptance of the transfer; its terms have never been questioned even by Martin; and Martin authenticated the copy at issue by his own sworn testimony.

## III.    ARGUMENT[5]

### A.    NAES Twice Expressly Raised Martin's Acceptance of a Transfer/Continued Employment as Grounds for Summary Judgment.

Martin avers an error in the District Court's decision based upon a distinction without a difference. Martin erroneously contends that the District Court *sua sponte*, and improperly, characterized the letter which offered him a transfer to the Pittsylvania Power Station as a separate contract instead of a "personnel action" and that this was a violation of Federal Rule of Civil Procedure 56(f)(2). Rule 56(f)(2) states in relevant part, "After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party . . ." FED. R. CIV. P. 56(f)(2).

---

[5] In accordance with FED. R. APP. P. 28(b)(5), NAES Corporation accepts the Standard of Review set forth in Martin's Opening Brief.

From the outset, NAES has argued that Martin accepted the offer of a transfer to another power station on terms which did not obligate NAES to pay him severance. In its initial motion to dismiss, NAES took the position that Martin's acceptance of the offer of a transfer to the Pittsylvania Power Station forfeited his right to severance. J.A. at 32-34. Then, in requesting that the District Court grant summary judgment, NAES again took the position that:

> [Martin] is not entitled to severance because *he accepted the transfer* to the Pittsylvania Power Station, and *NAES's offer of a transfer* to Pittsylvania specifically excluded him from eligibility for the severance under those circumstances.

J.A. at 105-06, *emphasis added*. Clearly, throughout this action, NAES has argued that Martin's acceptance of the offer to continue his employment was an election which precluded him from also claiming severance. Neither that dispositive issue, nor the undisputed facts supporting NAES's argument, have changed at any point in time throughout this litigation.

The District Court did not "reach[] outside of [the] issues to raise the notion that the transfer letter was actually a separate and binding contract." Martin Opening Br. at 19. In its opinion, the District Court stated:

> While there is no evidence to support [Martin's] contention that an oral agreement existed to give [Martin] severance pay "no matter what," there is dispositive evidence supporting [NAES's] contention that "NAES's *offer of a transfer* to Pittsylvania specifically excluded [Martin] from eligibility for the severance." The transfer letter, signed by [Martin], specifically states that *"upon acceptance of this offer of transfer,* previously provided severance documents ... become null

13

and void since no termination of employment occurred." Importantly, [NAES's] present motion includes the admission of [Martin] that he was informed by NAES that he "could have the severance or the job, one or the other, not both," and that armed with this knowledge, he signed the transfer letter. During oral argument, counsel for [Martin] did not dispute this, but simply stated that [Martin] recognized [NAES's] position while disagreeing with it. *But [Martin's] disagreement with the position of [NAES] does not mean that [NAES's] offer was anything other than what [NAES] purported it to be, and [Martin's] acceptance of that offer while disagreeing does not mean that there was no meeting of the minds; instead it means that [Martin] accepted an offer, albeit begrudgingly.*

J.A. at 327, *emphasis added, internal citations omitted*.

Moreover, a close look at the record upon which Martin relies to support his contention that the District Court in fact found in favor of Martin reveals that Martin misstates the record and the lower court's opinion. The District Court stated:

> I further note that if Plaintiff's construction of the timeline were correct and Plaintiff became eligible for severance upon the closing of the Altavista Power Station, rather than upon completion of the work at the Gordonsville Power Station, it would be irrelevant as NAES did in fact follow through and offer Plaintiff severance.

J.A. at 326. The District Court went on to say that the transfer letter had a legally binding effect despite counsel for Appellant's protestations to the contrary at oral argument. J.A. at 330-31. The District Court's framing of the issue as a separate contract to "relinquish" severance in exchange for the Pittsylvania job is in no way inconsistent with NAES's position, at the time and in this litigation, that Martin

14

could not transfer to the Pittsylvania Power Station and still be entitled to severance pay.

**B.    The District Court Did Not Err in Holding that Martin's Acceptance of the Transfer had a Legally Binding Effect.**

The Court should not reverse the District Court on grounds which Martin did not raise.  For the first time, Martin contends that there is a distinction between a legally binding contract and a personnel action, and the transfer letter is merely a personnel action.  Martin's argument is premised on inconsistent positions.  On the one hand, Martin argues that "[t]he first words of the letter are the words of an employer telling an employee what they are doing to him," Martin Opening Br. at 21, but then Martin states that he was terminated from employment with NAES prior to NAES's offer of the transfer to the Pittsylvania Power Station, *id.* ("And, of course, since Mr. Martin has already been terminated at that point . . .).

Nevertheless, once again Martin is arguing about a distinction without a difference.[6]  When the transfer letter is closely examined, it is clear that NAES was

---

[6] The cases upon which Martin relies to support his argument that the transfer letter is a personnel action and not a contract are inapposite.  *Steeves v. United States* does not address the issue of a distinction between a personnel action and a contract. 2006 WL 3526911 *2 (W.D. Va. Dec. 6, 2006) (whether a federal court can review personnel decisions of federal employees in light of the Civil Service Reform Act and the Whistleblower Protection Act.). *Faragher v. City of Boca Raton* simply defines a tangible employment action for purposes of an employer's liability in the sexual harassment context.  524 U.S. 775, 808 (1998). *Caldwell v. Johnson,* 289 Fed. App. 579, 585 (4th Cir. 2008); *Matvia v. Bald Head Island Management, Inc.,* 259 F.3d 261, 266 (4th Cir. 2001); and *Whitten v. Fred's, Inc.,*

making an offer on terms which Martin could accept or reject.  The letter states in relevant part:

> Please also note that *upon acceptance of this offer of transfer*, previously provided severance documents dated December 15, 2010 become null and void since no termination of employment occurred on December 26, 2010.
>
> *To confirm your acceptance, please return a signed copy of this letter* by fax to 425-961-4688, Human Resources Department.

J.A. at 161, *emphasis added*.   As Judge Moon noted, Martin had a choice, he did not have to go to Pittsylvania, and would have received severance pay.  J.A. at 297.   And again, Martin's argument erroneously focusses solely on the transfer letter as if it is the ***only*** evidence of his knowing acceptance of an offer precluding him from also receiving severance.  As noted above, there is extensive testimony and other documentary evidence that Martin knew his options and voluntarily, albeit begrudgingly, chose continued employment.  Indeed, he was advised by his current counsel before making this definitive election.  Thus, his repeated attacks on the transfer letter as if it were the sole evidence supporting the District Court's decision, are misplaced.

---

601 F.3d 231, 244 (4th 2010), *abrogated in part by Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013) are likewise inapplicable.

**C.    The District Court Properly Held That There Was a Meeting of the Minds Between Martin and NAES Corporation on the Terms of his Transfer.**

Martin's contention that there was not a meeting of the minds regarding the terms of his transfer to the Pittsylvania Power Station misstates basic contract law.

**1.    Mutual Assent Existed With Regard To The Transfer Agreement**

Martin manifested his assent to accepting the position at Pittsylvania without being paid severance through his actions.  The Supreme Court of Virginia has consistently set forth as necessary elements of contract formation that:

> [t]he parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract.  Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms.  If any portion of the proposed terms is not settled . . . there is no agreement.

*Smith v. Farrell*, 98 S.E.2d 3, 7 (Va. 1957) (citations omitted); see also *Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and therefore, no contract.") (citation omitted). "[M]utuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Moorman v. Blackstock, Inc.*, 276 Va. 64, 74, 661 S.E.2d 404, 409 (Va. 2008) (internal quotation marks and citation omitted).  When determining whether mutual assent exists to a degree sufficient to form an enforceable agreement, it is

17

the parties' written or spoken words or other acts or failure to act which is determinative. Restatement (Second) of Contracts § 19(1) (1981). Merely disliking an agreement's terms does not defeat mutual assent – there must be a fundamental misunderstanding about the contract's terms. *See, e.g. Conger Life Insurance Co. v. Deimel*, 441 So.2d 1116 (Fla. 3rd DCA 1983) (Employee's verbal objection to modified compensation terms did not defeat mutual assent because the employee continued to work). Moreover, in the employment context, courts have held that an employee's continued service after a change in the terms and conditions of employment denotes acceptance of an offer. *See e.g., Hercules Powder Co. v. Brookfield*, 189 Va. 531, 540 (Va. 1949); *see also, e.g. DiGiacinto v. Ameriko-Omserv Corp.*, (1997) 59 Cal. App. 4th 629 (69 Cal. Reptr. 2d 300) (Employee's refusal to sign new employment agreement with reduction in pay did not defeat mutual assent to the new compensation terms because the employee continued to work); *Conger Life Insurance Co.*, 441 So.2d at 1118.

The record shows that Martin did not like the terms of the transfer agreement, but he agreed to them nonetheless by his conduct. J.A. at 111-15(¶ 17); J.A. at 124(13:12-14). Martin signed the transfer agreement with the full understanding that NAES's position was that he would not be paid severance.[7]

---

[7] Martin's notations on the transfer letter, as discussed below in section C.2, did not alter his acceptance of NAES's terms for the transfer to Pittsylvania.

18

J.A. at 152-53(133:16 – 34:14); J.A. at 156(141:10-15); J.A. at 151(132:2-4); J.A. at 167-73; J.A. at 176-78.

Martin's belated characterization of the signed transfer letter as a counteroffer is belied by the record. Martin admits that none of the material terms was changed with his notations on the transfer letter. *Id.* Moreover, Martin cites to nothing in the record that shows by word or act that NAES manifested its consent to his so-called counteroffer.[8] J.A. at 111-115( ¶ 17); J.A. at 124(13:12-14); J.A. at 152-53(133:16 – 34:14); J.A. at 156(141:10-15); J.A. at 151(132:2-4); J.A. at 167-73; J.A. at 176-78. Instead, the record shows that Martin accepted the terms of NAES's offer of the transfer and commenced performing the duties of the Pittsylvania Power Station position immediately with full knowledge that NAES's position was that it would not pay him severance. J.A. at 161 ("Please see attached letter from my attorney, M. M. Spangler, dated December 28, 2010 which is hereby incorporated into ***this acceptance letter***.") (emphasis added); J.A. at 162 ("This letter is intended to serve as Mr. Martin's written acceptance to the offer of employment at Pittsylvania Power Station); *see also* J.A. at 22. To be clear, **Mr. Martin hereby ACCEPTS his current offer of employment at Pittsylvania Power Station, and is ready and willing to start work at the first available date**

---

[8] In fact, it is undisputed that NAES rejected Martin's attempt to change the terms of the transfer offer letter so the company would be obligated to pay him severance. Martin Opening Br. at 7-8.

that will ensure his fair treatment in all respects.").  Thus, the District Court correctly held that Martin's undisputed and informed decision to accept continued employment instead of severance pay precludes his breach of contract claim.

## 2.    The District Court Correctly Held That Martin Cannot Avoid his Express Acceptance of Continued Employment by Claiming "Duress"

Martin cites no authority to support his contention that the District Court erred with regard to the "under duress" language.   Martin vaguely argues that his notation, "under duress" on the face of the transfer agreement somehow precludes a meeting of the minds and that the District Court erred in finding that it did not. The District Court thoroughly addressed, and correctly determined, that the "under duress" language had no effect on Martin's acceptance of the transfer offer.

Duress is a defense to the enforceability of a contract.  *Freedlander, Inc. v. NCNB National Bank of North Carolina*, 706 F. Supp. 1211, 1215 (E.D. Va. 1988). The party seeking to avoid its obligation under a contract has the burden of proving duress.   Claims of duress cannot be based upon bare suggestion, innuendo or suspicion.  *Waddy v. Grimes*, 153 S.E. 807, 815 (Va. 1930).   It must be proven by clear, cogent and convincing evidence that the other party to the contract committed an unlawful or wrongful act sufficient to preclude a party from exercising his free will and thereby rendering his consent to the agreement involuntary.  *Freedlander, Inc.*, 706 F. Supp. at 1216.

20

The District Court held that "duress is 'the application of undue pressure in a contractual bargaining process through the use of improper threats or physical force.'" J.A. at 321, *quoting King v. Donkenny, Inc*., 84 F. Supp. 2d 736, 738 (W.D. Va. 2000).   The District Court went on to state, "[w]hile a cause of action for economic duress may be made out, 'a contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the facts is not a contract executed under duress.'"  J.A. at 321, q*uoting, Seward v. American Hardware Co.*, 161 Va. 610, 639, 171 S.E. 650, 662 (Va. 1933) (*quoting Cary v. Harris*, 120 Va. 252, 91 S.E. 166 (Va. 1917)).   In analogous situations where employees have been forced to make a choice, courts have found there was no pressure or compulsion.  S*ee, e.g. Connors v. Chrysler Financial Corp.*, 160 F.3d 971 (3d Cir. 1998) (employee forced to choose between retiring to secure benefits or continued employment with a reduction benefits was not constructive discharge); *Henn v. National Geographic Soc'y*, 819 F.2d 824, 826 (7th Cir. 1987) (holding that employees forced to decide between uncertain jobs with existing employer experiencing decline in sales, and early retirement were not constructively discharged because offer to retire early created potentially more lucrative option as an alternative to continuing employment and thus neither choice made plaintiffs "worse off"); *Rowell v. BellSouth Corp.*, 433 F.3d 794 (11th Cir. 2005) (an employee's forced choice between early retirement and a higher

21

severance or waiting to see if a position opened and possibly a lower severance if no position became available was not improper).

Martin's Opening Brief does not cite any authority to support his contention that the District Court made an error of law in concluding that the "under duress" notation on the face of the transfer agreement was ineffective to negate Martin's repeated and informed expressions of his intent to choose the option of continued employment knowing it would preclude him from also receiving severance. Further, Martin does not point to any evidence in the record that NAES forced or intimidated him into signing the transfer agreement.  Indeed, the District Court noted the absence of any such evidence, "[Martin] has never provided evidence that NAES in any way improperly threatened or coerced him into signing the transfer offer letter."  J.A. at 332.  In sum, there is simply no legal or factual support for Martin's "duress" argument.

### 3.    The Letter Attached to the Transfer Agreement Likewise Has No Effect on the Terms of the Transfer Agreement

Additionally, Martin raises for the first time on appeal, that the letter from his counsel which he incorporated into the transfer letter was a counteroffer which modified the contract.  Absent exceptional circumstances, the Court should not consider issues raised for the first time on appeal. *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 242 (4th Cir. 2009) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004).   The purpose of

22

the rule is to avoid unfair surprise to the other party and conserve judicial resources, and the need to bring finality to litigation. *Wheatley v. Wicomico Cty, Md*, 390 F.3d 328, 334-35 (4th Cir. 2004). Only when failure to address issues first raised on appeal would be a plain error or result in miscarriage of justice should the appellate court give consideration. *Williams v. Prof. Transp., Inc.*, 294 F.3d 607, 614 (4th Cir. 2002).

Martin never before put forward the theory that the letter from his counsel set forth additional terms or is a rejection and counteroffer to NAES's offer of a transfer to the Pittsylvania Power Station. Further, Appellant has not argued that exceptional circumstances or any other proper grounds justify the Court's consideration of his contention that the transfer letter was a counteroffer.

Nonetheless, like the duress language, the letter from Martin's counsel also was ineffective in changing the terms of Martin's transfer. J.A. at 161-63. The letter was not a counter offer. Restatement (Second) of Contracts § 59 (1981) ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer."). The letter unconditionally reiterated Martin's acceptance of the transfer to Pittsylvania. Nothing in the letter states that Martin's acceptance of the transfer was conditioned on NAES paying Martin severance. *Id.* Instead, counsel's letter simply stresses that though Martin understands he was offered

23

continued employment **or** severance, and he has nevertheless accepted continued employment, he believes he should be entitled to both and intends to file a claim in court based on that belief. *Id.*

As the District Court correctly pointed out, all of the evidence in the record shows that Martin understood that he could be paid severance or work for NAES at the Pittsylvania Power Station, but not both. J.A. at 152-53(133:16 – 34:14); J.A. at 156(141:10-15); J.A. at 151(132:2-4); J.A. at 167-73; J.A. at 176-78. That alone equals mutuality of assent or a meeting of the minds, and counsel's letter does nothing to alter that meeting of the minds.

### D.    The District Court Properly Considered the Transfer Offer Letter in Granting NAES's Motion for Summary Judgment.

The District Court did not err in considering the executed transfer letter as admissible evidence when deciding that Martin was not entitled to severance pay. NAES has continuously raised that Martin's acceptance of the transfer to the Pittsylvania Power Station by signing the transfer letter defeated any claim for severance. The transfer letter is not the only evidence that Martin knew that he could not have the Pittsylvania position and severance. At his deposition, Martin testified that NAES told him repeatedly that he could not have both severance and the job. J.A. at 151(132:2-4); J.A. at 152-53(133:16 – 34:14); J.A. at 156 (141:10-15). Martin's counsel conceded that the terms of the copy of the transfer letter to which NAES cites are the same as the transfer letter which Martin signed.

Finally, in his response to NAES's motion for summary judgment, Martin did not object to NAES's reliance on the executed transfer letter and did not move to strike the transfer letter. *See* J.A. at 194. Only during oral argument did Martin's counsel argue that the transfer letter was hearsay and the District Court should require the original document under the best evidence rule. J.A. at 296.

### 1. The Transfer Letter Is Not Hearsay

Federal Rule of Evidence 801(c) defines hearsay as ". . . a statement that . . . a party offers in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c)(2). Courts have held that a contract is not hearsay because it is a legally operative act not offered to prove the truth of the matter asserted. *See e.g., Preferred Properties Inc. v. Indian River Estates Inc.*, 276 F.3d 790, 799 n. 5 (6th Cir. 2002) (verbal acts creating a contract are not hearsay); *Kepner-Tregoe Inc. v. Leadership Software*, 12 F.3d 527, 540 (5th Cir. 1994) (finding contract to be a signed writing of independent legal significance and therefore non-hearsay); *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) (holding contracts and letters from attorney relating to the formation thereof are non-hearsay).

Especially instructive is the United States Court of Appeals for the Fifth Circuit's opinion in *Kepner-Tregoe, Inc.*, 12 F.3d at 540 (5th Cir. 1994). In *Kepner-Tregoe, Inc.*, the court states:

> Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay.

25

> A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it. Under the objective theory of contracts, the fact that two parties signed a contract is enough to create legal rights, whatever the signatories might have been thinking when they signed it. The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection. To introduce a contract, a party need only authenticate it.

*Id.* at 540. Likewise, as the District Court properly held, the transfer letter was a contract, and therefore was admissible evidence.[9]

### 2.    The Best Evidence Rule Does Not Preclude Admission of the Transfer Letter

Martin incorrectly argues that the transfer letter is not admissible under the best evidence rule. Rule 1003 of the Federal Rules of Evidence states that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to

---

[9] It is incredulous that Martin contends that the transfer letter is not a self-authenticating document under Federal Rule of Evidence 902, and therefore is not admissible. Martin Opening Br. at 25-26. Federal Rule of Evidence 901 gives parties multiple avenues for authenticating documents and evidence that do not fall under the provisions outlined in Rule 902. FED. R. EVID. 901. Rule 901(a) states:

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claim it is.

FED. R. EVID. 901(a). "Testimony that an item is what it is claimed to be" is sufficient to meet the requirements of Rule 901. *Id.* At his deposition, Martin identified the transfer letter and testified that his signature was included on the document. J.A. at 125(14:6-22). He did not indicate at that time that the transfer letter was in any way different than the one which he signed. *Id.*

admit the duplicate." FED. R. EVID. 1003.  Likewise, Rule 1004(c) states in

relevant part,

> An original is not required and . . . is admissible if . . . the party
> against whom the original would be offered had control of the
> original; was at that time put on notice, by pleadings or otherwise, that
> the original would be a subject of proof at the trial or hearing; and
> fails to produce it at the trial or hearing.

FED. R. EVID. 1004(c).

As stated above, Martin identified the transfer letter and his signature at his

deposition.  *Id.*  Additionally, as discussed above, Martin's counsel admitted that

the phantom letter that Notestein allegedly signed, and the transfer letter that

Martin ultimately signed and is included in the record are for all intents and

purposes identical.  J.A. at 297.  Ms. Spangler stated during oral argument:

> MS. SPANGLER:  He signed a letter under duress. We don't know
> that it is this one because Mr. Richard Notestein says it is not this one.
> Mr. Notestein says, "I signed the one that I gave to Mr. Martin."
>
> THE COURT:  Well, what did it say?
>
> MS. SPANGLER:  Basically the same thing.
>
> THE COURT:  Well, is there any difference?
>
> MS. SPANGLER:  The difference is Mr. Notestein's signature is not
> there. . .

*Id.*  Moreover, the copy of the transfer letter which NAES attached to its summary

judgment motion, and Martin authenticated at his deposition is not the one which

Martin attached to the Notestein affidavit.   The authenticated transfer letter

27

identifies NAES as the source of the document with the Bates number NAES00045. J.A. at 161. The other transfer letter, which Notestein questions, is not bates stamped, but identical to the authenticated version. J.A. at 213, (¶ 12); 215(Atch 1). Clearly, Martin was able to obtain an original or copy of the transfer letter, which he signed, from a source other than NAES through discovery in this litigation. Therefore, the best evidence rule is merely Martin's last ditch effort to save his breach of contract claim.

## IV.    CONCLUSION

The District Court did not cite to any material or grounds which were not the basis of NAES's motion for summary judgment. Further, the cited material indisputably shows that Martin was fully aware that his acceptance of the position at the Pittsylvania Power Station meant he was not entitled to severance pay because NAES repeatedly told him and rejected his altered transfer letter. By his actions, Martin assented to those terms. Finally, Martin failed to show and cannot show that the transfer letter could not be presented in a form that would be admissible in evidence at trial. Accordingly, based on the foregoing arguments and authorities, Appellee NAES Corporation respectfully requests that the Court affirm the District Court's decision granting summary judgment in favor of NAES.

Respectfully submitted,

/s/ Alison N. Davis
Alison N. Davis
andavis@littler.com
E. Ashley Sims, Bar No. 83333
easims@littler.com
Littler Mendelson, P.C.
1150 17th Street N.W.
Suite 900
Washington, D.C.  20036
Telephone:  202.842.3400
Facsimile:  202.842.0011

*Attorneys for Defendant-Appellee*
*NAES CORPORATION*

May 5, 2014

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 7,024 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.


/s/ Alison N. Davis
Alison N. Davis

*Attorneys for Defendant-Appellee*
*NAES CORPORATION*


Dated:  May 5, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 5, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Mary M. Spangler
> LAW OFFICE OF M.M. SPANGLER
> 6319 Still Spring Place
> Alexandria, VA  22315
> Telephone:  (703) 746-8373
> Email:  mspangler549@gmail.com
>
> *Counsel for Appellant*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/  Adrienne R. Acra-Passehl
> Adrienne R. Acra-Passehl
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219